Barr McCLELLAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–84–013–CR.

Court of Appeals of Texas,
Austin.

Nov. 27, 1985.

Rehearing Denied Jan. 8, 1986.

Barr McClellan, Houston, pro se.

Ronald Earle, Dist. Atty., David Reynolds, Asst. Dist. Atty., Austin, for appellee.

Before POWERS, GAMMAGE and KEITH (Retired), JJ.

## ON MOTION FOR REHEARING

KEITH, Justice (Retired).

Our prior opinion is withdrawn and this opinion is substituted in lieu thereof.

The appellant was convicted by the jury of forgery under the provisions of Tex.Pen. Code Ann. § 32.21(a)(1)(A)(iii) (1974), by passing a deed of trust as true "when no such original existed." The court fixed his punishment at confinement for ten years, probated. We affirm.

Appellant was a licensed attorney at law and had been engaged in law practice for many years before the incident forming the basis for this charge occurred. Appellant had sought a loan, to be secured by a lien on a lot in an Austin subdivision. This lot was, at the time, encumbered by a lien at another Austin bank and the new loan was needed to pay off the first lien on the property. To avoid paying the bank's counsel to prepare the documents to support the loan, it was agreed that appellant would do the necessary legal paper work. The loan was made after appellant had exhibited an appraisal of the specific lot to the bank's loan officer and appellant agreed to prepare the note and deed of trust to secure the indebtedness.

The loan was made but appellant did not deliver the supporting documents to the bank. Danny Payne, president of the bank, then asked appellant to furnish the documents he had promised. At about the same time, Payne engaged a lawyer to search the deed records to ascertain the property's title status. The attorney, Gene Childs, could not find a deed of trust from appellant to the bank, so Childs asked appellant to bring his completed copy to the bank, and appellant promised to do so.

On March 24, 1981, appellant brought a package of papers to the bank and handed them to Payne, saying, according to Payne, "Danny, here is the deed of trust." One of the bank's regular attorneys, Adrian Overstreet, was present in Payne's office at the time and corroborated Payne's version of the event.

A subsequent examination of the documents revealed many discrepancies, including a description of land different from that of the deal as made.[1]

The State produced evidence showing that appellant had handled a transaction involving one Shedd Williams and another Austin bank. The filing data on the instrument involved in this case was more nearly applicable to the Williams instrument than to the date of appellant's loan. The State also proved by the county clerk that the deed of trust passed by appellant was not a properly filed document. In the interest of brevity, we omit the reasons advanced by the clerk supporting her assertions. Moreover, several alterations appeared on the face of the instrument handed by appellant

---

1. The bank thought it was loaning money on Lot No. 30, Avalon A, City of Austin, while the documents handed to Payne by appellant related to Lot 91, Avalon C, City of Austin. The recording date shown was different from the date when the instrument should have been filed.

to Payne, and the notary denied having notarized the instrument.

Discrepancies were also found in the title information and policy information furnished by Stewart Title Company which was contained in the package of papers passed by appellant to Payne. Similarly, discrepancies appeared in the appraisal report and in the surveyor's field notes, which were included in the package of papers.

Appellant did not testify at the trial and, as indicated, the jury found him guilty of passing a forged instrument.

Appellant complains, by grounds of error four and five, that the trial court erred in granting the State's motion to substitute the indictment. According to appellant, the court's actions with regard to the substitution did not comply with Tex.Code Cr.P. Ann. art. 21.25 (1966), which governs such procedures.

The record reflects that the indictment's defectiveness was first discovered during the court's consideration of appellant's motion to dismiss for lack of speedy trial. The defect in the indictment was brought to the court's attention by appellant's counsel and then discussed by the prosecutor, appellant's counsel and the court. During the discussion, the court suggested that art. 21.25 would be controlling in this instance. There was evidence presented that the original indictment had the deed of trust stapled to the first page of the indictment. The court examined the indictment and concluded that something had in fact been removed from the indictment in that staple marks were present where the deed of trust had been purportedly located. Immediately thereafter, the court arraigned the appellant.

State's counsel then made a motion to substitute the indictment and an order granting the motion was signed to reflect what transpired at the hearing. The motion and order preceded the commencement of the trial.

The statute governing the substitution, art. 21.25, *supra*, reads:

When an indictment or information has been lost, mislaid, mutilated or obliterated, the district or county attorney may suggest the fact to the court; and the same shall be entered upon the minutes of the court. In such case, another indictment or information may be substituted, upon the written statement of such attorney that it is substantially the same as that which has been lost, mislaid, mutilated, or obliterated. Or another indictment may be presented, as in the first instance; and in such case, the period for the commencement of the prosecution shall be dated from the time of making such entry.

Appellant contends the substitution was improper because the court itself made the suggestion of loss rather than the prosecutor. We disagree. The record reflects that the prosecutor did in fact make the suggestion of loss. The record reveals the suggestion of loss, the leave of the court to substitute, the fact that the substitution was made, and that appellant was given the right to contest the substitution. Therefore, the substitution was properly made.

█ Additionally, appellant contends the case must be dismissed because he was not provided two days service of the substituted indictment. Again, we disagree. When an indictment is lost or mutilated and no new indictment is returned, there is simply a substitution of the lost or mutilated paper. The defendant is not entitled to two days service of the substituted indictment. *James v. State*, 52 Tex.Cr.R. 21, 105 S.W. 179 (Tex.Cr.App.1907). We overrule appellant's fourth and fifth grounds of error.

Appellant complains by grounds of error six and seven that the trial court erred in not dismissing the case in that appellant was denied his right to a speedy trial under Tex.Code Cr.P.Ann. art. 32A.02 (Supp. 1985). The original complaint was filed and appellant posted personal bond on April 15, 1981. The State's announcement of ready for trial was filed on August 14, 1981, 121 days after the original complaint was filed and appellant's bond was posted.

Nonetheless, the trial court did not err in denying appellant's motion to dismiss for lack of a speedy trial under art. 32A.02, *supra.*

Article 32A.02, *supra,* states in pertinent part:

Section 1. A court shall grant a motion to set aside an indictment, information, or complaint if the state is not ready for trial within:

(1) 120 days of the commencement of a criminal action if the defendant is accused of a felony; ...

The rule for dismissal under the Speedy Trial Act is stated clearly in *Teamer v. State,* 685 S.W.2d 315 (Tex.Cr.App.1984):

In the instance where the statutory time period has expired, and the accused has timely and properly invoked the Act, and motions the trial court to dismiss the indictment because the State has failed to comply with the Act, it is incumbent upon the trial court to grant the motion to dismiss, unless the State establishes that it was then ready for trial *and* had been ready for trial at all times since the criminal action commenced, *or it establishes that sufficient periods of time within the prescribed period of time are excludable under the Act. Jordan v. State,* 639 S.W.2d 477 (Tex.Cr.App.1982); *Pate v. State,* 592 S.W.2d 620 (Tex.Cr. App.1980). Thus, if the statutory time period has expired, and the accused has invoked the Act, then the State must demonstrate both that it was then ready and had been ready for trial at all times within the statutory time period, or else the State must demonstrate or establish that sufficient periods of time are excludable under the Act, in order to bring its announcement of readiness within the statutory 120 days. [citation omitted]

685 S.W.2d at 318 (emphasis added). If the State announces ready at a time that is *not within* the applicable time limits and does not say that it was ready within the statutory time limit, then the burden is on the State to prove that certain times are excludable under Section 4 of the Act, so as to bring the State within the time limit. *Ex*

*Parte Hilliard,* 687 S.W.2d 316 (Tex.Cr. App.1985); *Pate v. State, supra.*

The State's announcement said only that the State was ready for trial on August 14, 1981, and did not express whether the State had been ready for trial at all times since the complaint was filed. At the hearing on the motion to dismiss for lack of a speedy trial, counsel for appellant testified about negotiations he participated in with the bank's attorney prior to the return of the indictment regarding the related civil lawsuit and the possibility of resolving the matters "informally." Appellant's attorney conceded that, at the very minimum, one week of the delay between the filing of the complaint and the return of the indictment was caused by defendant's own conduct in trying to resolve the matters informally:

Q. How long did that proceed, the informal discussions to try to resolve it?

A. To tell you the truth, they didn't go on that long, and my recollection is I was kind of surprised that the indictment wasn't returned any sooner than it was, because the thing—at some point in there, if I recall correctly, it sort of fell through, and I don't know if that was two weeks or six weeks or when that was, but I don't think the entire delay between complaint and indictment was attributable to us trying to work it out.

Q. How much of that time would you say, as a reasonable estimate?

A. Half.

Q. Several weeks?

A. As a crude estimate. I would say half of it was.

Section 4 of art. 32A.02, *supra,* states, in pertinent part:

Sec. 4. In computing the time by which the state must be ready for trial, the following periods shall be excluded:

(1) a reasonable period of delay resulting from other proceedings involving the defendant, including but not limited to proceedings for the determination of competence to stand trial, hearing on pretrial

motions, appeals, and trials of other charges; ...

\* \* \* \* \* \*

(10) any other reasonable period of delay that is justified by exceptional circumstances.

■ The Speedy Trial Act addresses itself to prosecutorial delay rather than a delay in the judicial process as a whole. *Barfield v. State*, 586 S.W.2d 538 (Tex.Cr. App.1979). In determining whether a particular delay is justified by exceptional circumstances, the focus is on whether the delay was within the control of the prosecutor. *Lloyd v. State*, 665 S.W.2d 472 (Tex. Cr.App.1984). The existence of a charging instrument is an element of State preparedness. *Kernahan v. State*, 657 S.W.2d 433 (Tex.Cr.App.1983); *Pate v. State, supra*. In *Pate v. State, supra*, it was held that the State could not have been ready within the 120-day time period of the Speedy Trial Act because there was no indictment or felony information upon which the State could have announced ready. Here, appellant's counsel admitted that at the very least one week of the delay in the handing down of the indictment was attributable to the defendant. The State announced ready only three days after the indictment was finally returned, which was *only one day* past the expiration of the 120–day time period under the Speedy Trial Act. While the related civil matter could conceivably be construed as an "other proceeding" under § 4(1) of art. 32A.02, *supra*, the examples cited in that subsection of the statute deal more with related criminal matters. The delay here more closely corresponds to "exceptional circumstances," and we hold that the delay in the indictment attributable to the appellant, at least one week by his attorney's admission, is an excludable period under § 4(10), art. 32A.02, *supra*.

■ Appellant further contends that the trial court erred in not dismissing the case because the State was not actually ready when it so announced. Appellant alleges the State's prosecutor, Jacqueline Strashun, was on vacation in April of 1982 when the case was scheduled to go to trial. However, evidence was introduced that the trial court's docket was full at that time. Furthermore, the record reflects appellant filed two motions for continuance during that period of time.

■ Appellant urges that the State could not have been ready because the pre-trial motions were not filed until September 1981, and were not ruled upon until October 1981. The motions, however, were those of the appellant, not the State.

■ Finally, appellant asserts the State did not file its notice of filing necessary business records until April 2, 1982, and therefore could not have proven its case prior to that time. Although it is true that the business records were not filed until that time, appellant failed to prove how these records were essential to the State's case. The State had the forged deed of trust and the ability to call witnesses to prove the forgery, irrespective of the business records. A declaration by the State of its readiness for trial is a *prima facie* showing of conformity with the Speedy Trial Act. *Barfield v. State, supra*.

The defendant can rebut this by evidence demonstrating that the State was not ready for trial during the Act's time limits. *Scott v. State*, 634 S.W.2d 853 (Tex.Cr.App.1982). In this case, appellant failed to rebut the State's showing of readiness for trial. Therefore, appellant's sixth and seventh grounds of error are overruled.

As noted earlier, appellant had been a lawyer in Austin for many years before the commencement of the trial of this case. He was also the ex-husband of a former mayor of the City of Austin and a former partner in a large law firm in the city. In short, he was well known in the community and among the members of the trial judiciary of the county. He filed a pre-trial motion to recuse *all* of the district judges of Travis County, claiming legal and political opposition existed against him. The motion, filed March 22, 1982, did not come on for hearing until September 14, 1982, as a jury panel was being assembled outside

the courtroom. The recusal hearing was before Judge Herman Jones, the presiding judge of the administrative district.

Appellant testified as to his former relationship with the mayor, and his membership in the Clark, Thomas law firm, and told of having appeared before every district judge in the county during his practice. He said that members of the Clark, Thomas law firm had told him that they were not going to let him succeed in practice in Travis County. Appellant also related that thereafter in his trial of cases before the several judges he had lost all but three of 178 contested matters, leading him to believe that he could not receive a fair trial in the county before any of these judges.

The trial judge, the Honorable Jon Wisser, testified that he had no bias or prejudice against appellant. The recusal motion was overruled by Judge Jones and this action now forms the base of several grounds of error. Recently, the provisions of the civil statutes have been made applicable to the trial of criminal cases in the area of recusal of trial judges. *See McClenan v. State*, 661 S.W.2d 108, 109 (Tex.Cr.App.1983).

All parties concede that the trial judge against whom the recusal motion is aimed cannot pass upon the motion. *See* Tex. Gov.C. § 74.036(c) (1985); *McInnis v. State*, 618 S.W.2d 389 (Tex.Civ.App.1981, writ ref'd n.r.e.). But, following the lead of the Supreme Court in *McLeod v. Harris*, 582 S.W.2d 772 (Tex.1979), in criminal cases the courts of this state apply the civil statute and the Canons of Judicial Ethics governing the question.

■ The broadness of the challenge and the vagueness of the evidence of bias led Judge Jones to overrule the motion to recuse. Our review of the record does not lead us to the conviction that there was an abuse of discretion. For aught that appears in the record, appellant's clients should have lost 175 of the 178 cases he tried; at least, no evidence was introduced showing that any appellate court had ever reversed a single adverse decision.

■ We decline to hold that simply because a judge renders a judgment against the contentions of a lawyer, the judge is biased or prejudiced against the lawyer. Instead, we are of the opinion that such fact, standing alone, proves only that the lawyer's client did not prevail, presumptively for want of merit. All grounds relating to the recusal motion are overruled.

■ In his eighth and ninth grounds of error, appellant renews his attack upon the legal sufficiency of the indictment. He argues that there is a fatal variance between the evidence and the printed material on the copy of the forged deed of trust attached to the indictment. As he asserts, the latter is 1.3 centimeters smaller than the body of the printed material on the deed of trust introduced at the trial. Since the attachment to the indictment was a photocopy of the other instrument, State's counsel suggests that the machine might have reduced the material a fraction of an inch when it reproduced the copy. Assuming appellant's factual statement to be correct, we do not find a variance. *See McKellar v. State*, 641 S.W.2d 240 (Tex.Cr. App.1982). We note, particularly, that there is no contention that there was a material omission of some portion of the copied instrument which was attached to the indictment. Thus, there was no variance under *Anderson v. State*, 144 Tex. Cr.R. 26, 161 S.W.2d 88 (Tex.Cr.App.1942), upon which the State relies. Ground eight is overruled.

Nor do we find merit in his ninth ground of error wherein appellant claims that "the forged document was not done by another party, without authority." It must be remembered that in this instance, the prosecution was for violation of the provisions of § 32.21(a)(1)(A)(iii), *supra*, and our examination reveals that the indictment contains all of the elements necessary to support a conviction under this statute.

■ By ground of error ten, appellant challenges the sufficiency of the evidence to support a finding that there was a completed passing of a forged instrument. The Court of Criminal Appeals, however, in

*Landry v. State*, 583 S.W.2d 620, 623 (Tex. Cr.App.1979) concluded

> that "pass" in the forgery statute means to offer the forged instrument, and it does not require a showing that the defendant actually received consideration in exchange for [it].

That decision was subsequently reaffirmed by the Court in *McGee v. State*, 681 S.W.2d 31 (Tex.Cr.App.1984). Grounds of error eleven, twelve and thirteen challenge the sufficiency of the evidence to support a finding that appellant passed a forgery. Our review of the record set out herein, along with our review of the record as a whole, convinces us that the State established all of the requisite factual bases to support appellant's guilt as charged. Accordingly, grounds ten through thirteen are overruled.

In ground fourteen, appellant contends that the trial judge engaged in "numerous prejudicial ex parte communications." From our examination of the record, we are of the opinion that appellant lacks a factual base for this ground of error. Viewing the record in its entirety, as well as the particular areas mentioned by appellant, we find no impermissible ex parte communications on the part of the trial judge. Consequently, there is no merit in the contention now advanced. *See generally Tamminen v. State*, 653 S.W.2d 799 (Tex.Cr.App.1983).

In his final attack upon the trial court's judgment, appellant also argues that the court erred in attempting to amend the indictment upon which appellant went to trial because of lack of evidence to support such action. Apparently, this has reference to the action taken in response to this Court's order to amend the record. In urging this ground, appellant relies upon *Jackson v. State*, 419 S.W.2d 370 (Tex.Cr. App.1967), which we find inadequate to support the relief sought. *Jackson* specifically mentions that there was "nothing in the record to support the State's contention that there was an erroneous spelling of the name of the deceased."

Here, the trial court heard testimony from Tom Gates, who had prepared the indictment. Gates testified as to his usual procedures and described the same in detail as having been followed in this case. We find that the evidence at the hearing supported the trial court's action in supplementing the record. *See Resendez v. State*, 495 S.W.2d 934 (Tex.Cr.App.1973). We overrule the fifteenth ground of error.

In his final ground, number sixteen, appellant charges that this Court reversibly erred in this appeal by conducting ex parte communications with the State's counsel in an attempt to correct the defect in the indictment. Such allegation is categorically denied. The Court simply asserted its inherent judicial power and authority to direct the parties and their counsel in the proper preparation and presentation of the appellate record. At no time did this Court, or any staff member, engage in any communications designed to injure or thwart the rights of appellant. Ground sixteen, lacking a factual base, is overruled.

We have given careful attention to the many complaints of appellant; but, finding no reversible error, the judgment of the trial court is in all things affirmed.