**Gary Lance GLOVER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 05–86–00875–CR.

Court of Appeals of Texas, Dallas.

Oct. 29, 1987.

Rehearing Denied Dec. 2, 1987.

Discretionary Review Refused Dec. 9, 1987.

John H. Hagler, Dallas, for appellant.

Donald G. Davis, Dallas, for appellee.

Before STEPHENS, McCLUNG and LAGARDE, JJ.

LAGARDE, Justice.

This appeal from a conviction for robbery originally was consolidated with an appeal from a conviction, resulting from the same trial, for the aggravated robbery of a different complainant. On September 8, 1987, we affirmed appellant's conviction for aggravated robbery. *Glover v. State*, No. 05–86–00876–CR (Tex.App.—Dallas, Sept. 8, 1987, pet. filed) (unpublished). The transcript in the appeal from the present case, however, contained a copy of the indictment which was not signed by the grand jury foreman. It was accompanied by a certificate by the clerk of the trial court which stated: "This is to certify that this is a true and correct copy of a True Bill of Indictment for Gary Lance Glover [in the present case]. The original T/B has been lost."[1] Because appellant in his third point of error contended that the copy of the indictment had not been properly substitut-ed for the lost original, we abated the appeal in the present case and directed the trial court to conduct a hearing so that a copy of the indictment could be properly substituted.

After abatement, the State filed a "Motion for Suggestion of Lost Indictment." Attached to the motion was State's Exhibit A which, the State contended, was an exact copy of the original indictment in the present case. The trial court conducted a hearing and the statement of facts from that hearing is now before us, together with the trial court's order on that motion. The order recites that the original indictment is lost, that "State's Exhibit 'A' is exactly the same (except for the signature of the Foreman of the Grand Jury) as said original indictment" and further directs that "said copy [State's Exhibit A] shall be substituted" for the lost original indictment. Even a cursory glance at State's Exhibit A, however, reveals that it is not a copy of the indictment in the present case. Instead, it is a copy of the indictment in the aggravated robbery case, which occurred on a date other than the date of the offense in the present case, involved a different complainant, and involved the use and exhibition of a deadly weapon. As we have noted, the conviction for aggravated robbery has already been affirmed by this court. Accordingly, the record in the present case still does not contain a properly substituted copy of the indictment; thus, we sustain appellant's third point of error, reverse the trial court's judgment, and remand the cause to the trial court for a new trial.

Article 21.25 of the Texas Code of Criminal Procedure provides:

When an indictment or information has been lost, mislaid, mutilated or obliterated, the district or county attorney may suggest the fact to the court; and the same shall be entered upon the minutes of the court. In such case, another indictment or information may be substituted, upon the written statement of such attorney that it is substantially the same as that which has been lost, mislaid

---

1. We will refer to this copy of the indictment as the "certified copy" throughout this opinion.

mutilated, or obliterated. Or another indictment may be presented, as in the first instance; and in such case, the period for the commencement of the prosecution shall be dated from the time of making such entry.

Tex.Code Crim.Proc.Ann. art. 21.25 (Vernon 1966).

In its brief, the State urges that "[f]rom the absence of any suggestion of loss of [the] indictment by the prosecutor, from the lack of an objection from appellant that the original indictment was missing, from the lack of a docket entry by the court, and from the lack of any other document addressing the missing indictment, the record suggests that no one, other than the court clerk, was aware of this shortcoming until appellant's counsel on appeal discovered it." [2] Accordingly, the State reasons that appellant was not harmed by the substitution of a "certified copy" of the indictment for the original without compliance with article 21.25. Significantly, appellant does not suggest that he was so harmed, nor does he contend that the "certified copy" is not a true and correct copy of the original.

Ordinarily, we would find the State's reasoning persuasive. However, article 21.25 has been carried forward from earlier codes of criminal procedure in virtually identical form since at least 1879.[3] Thus, the cases concerning substitution of a copy of the indictment for a lost original predate widespread application of the harmless error concept.[4] Instead, early cases dealing with indictments which were lost before trial held that an order by the trial court substituting a copy of the indictment for the lost original "is a jurisdictional fact ... that must be shown." *See Burrage v.*

*State,* 44 S.W. 169 (Tex.Crim.App.1898); *see also Hollingsworth v. State,* 87 TexCrR 399, 221 S.W. 978, 979 (1920) (when indictment was lost after transfer of case but before trial began, court to which case was transferred lacked jurisdiction in the absence of an order substituting a copy for the original, even though defendant had entered his plea to the original indictment); *cf. White v. State,* 72 TexCrR 116, 160 S.W. 703, 704 (1913) (where indictment was missing when case was called for trial and county attorney, without filing written statement that indictment was lost or that substituted copy was a true copy of the original, was permitted to write out an indictment and read it to the jury, written request to permit filing of substituted indictment made after term expired did not comply with statute).

*Burrage* and *Hollingsworth* may be distinguishable from the present case because in each of them the indictment was lost before trial. In the present case, the record does not reflect when the original indictment was lost or when the loss was discovered, although in its general comments to the venire panel before voir dire, the trial court stated: "He [appellant] has a copy of it [the indictment], his attorney has a copy of it, the state has a copy of it, I have the actual true bill of indictment in each case up here." Nevertheless, assuming, without deciding, that the language of *Burrage* and *Hollingsworth* suggesting that a proper order substituting a copy of the indictment is jurisdictional applies when the indictment is lost pre-trial, and further assuming, without deciding, that in the present case the indictment was lost post-

---

**2.** The briefs were, of course, filed before the present case was abated. Nevertheless, because the evidence presented at the hearing after abatement and the copy of the indictment substituted by the trial court after that hearing were erroneously based upon the aggravated robbery case, the statements made in the briefs continue to accurately reflect the state of the evidence before us in the present case.

**3.** *See* Tex.Code Crim.Proc. art. 434 (1879), *recodified as* Tex.Code Crim.Proc. art. 470 (1895), *recodified as* Tex.Code Crim.Proc. art. 482 (1911), *recodified as* Tex.Code Crim Proc. art.

418 (1925), *recodified as* Tex.Code Crim.Proc. art. 21.25 (1965).

**4.** Our research has revealed only one modern case concerning article 21.25 of the Texas Code of Criminal Procedure or its predecessor statutes. *See McClellan v. State,* 701 S.W.2d 671 (Tex.App.—Austin 1985, pet. granted). *McClellan* simply held, however, that substitution is not improper because the court, rather than the prosecutor, made the suggestion of loss required by article 21.25. *McClellan,* 701 S.W.2d at 673. Thus, *McClellan* is inapplicable to the present case.

trial, we have found no cases dispensing with the requirement that the state or county attorney suggest to the court that the indictment is lost or dispensing with the requirement that a written statement be supplied by such attorney stating that the copy is a correct copy of the original merely because the loss was post-trial. *See Harwood v. State*, 16 Tex.Ct.App. 416 (1884); *Turner v. State*, 16 Tex.Ct.App. 318 (1884); *Schultz v. State*, 15 Tex.Ct. App. 258 (1883) (where an indictment has been lost or destroyed after trial and conviction, it may be supplied either by the presentment by the grand jury of a second indictment, or by substitution). *Harwood, Schultz,* and *Turner* all concern situations in which the indictment was lost post-trial, yet each of these cases requires compliance with the statute. *Compare James v. State*, 62 TexCrR 610, 138 S.W. 408 (Tex. Crim.App.1911) (where county attorney presented motion for substitution of copy after trial, and, at hearing, presented evidence that information had been lost after trial, trial court's order permitting substitution of copy was not error, even though contrary evidence presented by defendant showed information was lost at time of trial).

We note, however, that in *Schultz* the court stated:

> Even if the substitution had not been made in compliance with the statute, but was made under the direction and in a manner satisfactory to the court, we are of the opinion that in a case like this, where the substitution is after plea to the indictment, it would be held sufficient, independent of the statute.

*Schultz,* 15 Tex.Ct.App. at 270. For several reasons, we decline to rely on this statement in *Schultz* to hold that a copy of the indictment may be substituted for a lost original without compliance with article 21.-25 of the Texas Code of Criminal Procedure. First, the statement is dicta; the court held that the substitution complied with the statute. Second, although the record in the present case shows that the trial court had the original indictment during voir dire, the record fails to show that appellant entered his plea to the original

indictment. Third, even the dicta statement in *Schultz* requires that substitution should be "made under the direction and in a manner satisfactory to the court." Nothing in the record in the present case indicates that the substitution of a "certified copy" by the clerk of the trial court was made under the direction of the court or that such a substitution was satisfactory to the trial court. Indeed, the State argues that "the record suggests that no one, other than the court clerk" was aware of the missing indictment.

The State in its brief also cites *Broussard v. State*, 471 S.W.2d 48 (Tex.Crim. App.1971), but it concedes that *Broussard* is distinguishable from the present case. We agree. *Broussard* held that under former article 44.11 of the Texas Code of Criminal Procedure, where an indictment was lost after trial, the State filed a "suggestion of lost indictment," a hearing was held, and the court entered an order substituting the copy of the indictment for the original, the trial court's finding that the substituted copy was a true and correct copy of the original was supported by the evidence and the finding would not be disturbed on appeal. *Broussard,* 471 S.W.2d at 50.

■ The provisions of what was article 44.11 of the Texas Code of Criminal Procedure are not contained in rule 50(e) of the Texas Rules of Appellate Procedure. That rule provides:

> Lost or Destroyed Record. When the record or any portion thereof is lost or destroyed it may be substituted in the trial court and when so substituted the record may be prepared and transmitted to the appellate court as in other cases....

Tex.R.App.P. 50(e). We need not determine the method by which lost portions of a record may be substituted under this provision, however, because we conclude that article 21.25 of the Texas Code of Criminal Procedure controls over rule 50(e) of the Texas Rules of Appellate Procedure. Article 21.25 exclusively concerns lost indictments, while rule 50(e) applies to any

lost portions of the record. Where a special statute is complete within itself, it controls over a general statute, regardless of the order in which the statutes were enacted. *Cuellar v. State*, 521 S.W.2d 277, 279 (Tex.Crim.App.1975). Thus, we hold that article 21.25 of the Texas Code of Criminal Procedure provides the only method by which a copy of an indictment may be substituted in the trial court for a lost original indictment.

We recognize that the applicable case law was decided before the widespread availability of copying machines that can now insure the accuracy of a copy of an indictment substituted for an original. Nevertheless, we are bound by the pronouncements of the Court of Criminal Appeals until it rules otherwise and we conclude that, under the applicable case law, we are not at liberty to engage in an analysis of whether appellant was harmed by substitution of a copy of the indictment which was not in compliance with article 21.25 of the Texas Code of Criminal Procedure. Accordingly, we sustain appellant's third point of error, reverse the trial court's judgment, and remand the cause to the trial court for a new trial.

Appellant next contends that the testimony by the complainant, Marilyn Knickmeier, identifying appellant as the robber was tainted by impermissibly suggestive photograph arrays and that the testimony, therefore, should have been suppressed. We disagree.

■ At the outset, we note that appellant makes only the bare assertion that "[a] review of all these photographs [in the array] reveals that the subjects are dissimilar in physical appearance," without stating in what way the photographs differ so as to highlight appellant's photograph for possible identification. *Compare Turner v. State*, 614 S.W.2d 144 (Tex.Crim.App.1981) (of eleven photographs, seven were black and white and, of the four color photographs, three were of the defendant and only the defendant appeared in the photographs in jail clothing). Nevertheless, accepting appellant's premise that the photo-graph arrays were impermissibly suggestive, we hold that the trial court did not err in holding that the complainant's in-court identification testimony was of an origin independent of the photograph array.

The factors to be used in determining the origin of in-court identification of a defendant are:

(1) the prior opportunity to observe the alleged criminal act

(2) the existence of any discrepancy between any pre-lineup description and the defendant's actual description

(3) any identification prior to lineup of another person

(4) the identification by picture of the defendant prior to the lineup

(5) failure to identify the defendant on a prior occasion, and

(6) the lapse of time between the alleged act and the lineup identification.

*Turner*, 614 S.W.2d at 146; *Thompson v. State*, 480 S.W.2d 624, 627 (Tex.Crim.App. 1972).

Knickmeier testified in a hearing outside the presence of the jury that on March 8, 1986, at 4:50 p.m. a man entered the store where Knickmeier worked and robbed her. Knickmeier testified that it was "still daylight" at the time and that both sunlight from outside and the artificial lights inside illuminated the store. Knickmeier testified that she looked at the man "full face" for about five seconds and that the man had dark hair which was "fairly short" and a mustache. This description was consistent with appellant's appearance, except that, when arrested, appellant did not have a mustache. A police officer testified, however, that when appellant was arrested two days after this offense, he appeared to have recently shaved.

Knickmeier testified that three or four days after the offense she viewed a photograph array in which she tentatively identified a photograph as that of the man who robbed her; however, she told the police officer that "the hair was a little differ-

ent."[5]  Several days later, Knickmeier viewed a different photograph array. At that time, she identified a photograph of appellant as that of the man who robbed her.

We hold that the factors enunciated in *Turner* were sufficiently met here so that the trial court correctly held that Knickmeier's identification of appellant was of an origin independent of the photograph array. Knickmeier observed the robber in good light, "full face," for about five seconds. Knickmeier tentatively identified appellant as the robber when she viewed the first photograph array, positively identified appellant when she viewed the second photograph array, and never identified anyone else as the robber. In addition, the identification came only a few days after the offense.

Accordingly, because Knickmeier's testimony adequately showed that it was of an origin independent of the photograph arrays, the trial court did not err in refusing to suppress the testimony. We overrule appellant's remaining point of error. The trial court's judgment is reversed and the cause is remanded to the trial court for a new trial.

5. It is unclear from the record whether the photograph was that of appellant; however, it appears that it was.