IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0614-06



 



THE STATE OF TEXAS
 


v.



LARRY DON DOTSON, Appellant






ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SECOND COURT OF APPEALS


DENTON COUNTY





 Price, J., delivered the opinion for a unanimous Court. 


O P I N I O N



 We granted review in this case to examine whether the Second Court of Appeals erred
in deciding that Article 21.25 of the Texas Code of Criminal Procedure was not applicable. (1) 
We conclude the court of appeals did err in its conclusion. Therefore, we reverse the
judgement of the court of appeals and remand to the court of appeals for consideration of the
appellant's remaining points of error.

THE FACTS AND PROCEDURAL POSTURE


 In January 1994, a grand jury returned two indictments against the appellant. Both
indictments alleged involuntary manslaughter, but each named a different victim: Tracy Carlton
and Natalie Gale. (2)
 On June 9, 1994, the appellant pled guilty, pursuant to a plea agreement, to
two seemingly separate charges of involuntary manslaughter in cause numbers F-94-0112-E
("112") and F-94-0113-E ("113"). The trial court sentenced him to ten years in the
Correctional Institutions Division of the Texas Department of Criminal Justice in each case,
but suspended the two sentences and placed the appellant on community supervision for ten
years for each conviction.

 On March 13, 2003, the State sought to revoke the appellant's community supervision. 
In the course of preparing the motions to revoke, the State discovered that the indictments on
file in the district clerk's office in cause numbers 112 and 113 were identical. Though
assigned different cause numbers, the indictments in the clerk's file were the same in every
regard, including the named victim, Tracy Carlton. Subsequent to this discovery, the State filed
a motion to substitute indictment under Article 21.25 of the Code of Criminal Procedure. The
appellant filed an application for a writ of habeas corpus on grounds that double jeopardy was
violated when the appellant pled guilty to the exact same offense more than once. 

 The trial court conducted a hearing on the three motions. (3) At the hearing, the State
hypothesized that a clerical error occurred in the clerk's office that resulted in the two
identical indictments ending up in the clerk's file. In support of this hypothesis, the State
called Kevin Henry, chief of the intake section for the Denton County District Attorney, to
testify about the general procedure for procuring an indictment in that county. Henry testified
that, once a grand jury decides to indict an individual, four duplicate original indictments are
returned in each cause. Upon return, these duplicate originals are presented to the trial court,
which presumably retains one for the clerk's file (the "original" indictment), and then the
remaining duplicate originals are apparently distributed to the State, the defense, and to the
Denton County Probation Department. (4) Henry opined that, in this particular case, it is possible
the clerk's office mistakenly filed the same indictment twice because the appearance of each
indictment was identical except for the named victim. 

 To establish that the error was clerical, the State presented evidence that the State, the
appellant's trial counsel, and the Denton County Probation Department all received copies of
the indictment that bore file markings by the clerk's office and showed Natalie Gale as the
victim in cause number 113 and Tracy Carlton as the victim in cause number 112. (5) Witnesses
from all three testified that they were aware that the appellant was charged with two separate
offenses. In fact, the appellant's trial counsel stated that he proceeded to represent the
appellant with the understanding that the appellant faced two separate charges for involuntary
manslaughter. He further testified he would not have accepted a plea agreement had he thought
the appellant was pleading guilty twice to the exact same crime.

 The State offered into evidence a purported original indictment in cause number 113,
with Natalie Gale as the named victim. This indictment was signed by both the jury foreman
and the District Attorney and was file stamped by the clerk's office. Additionally, the State
elicited testimony from two witnesses that this particular indictment was the original because
the handwritten cause number and the file stamp were in blue ink. (6) The State then requested
the trial court to substitute the purported original indictment for the filed indictment.

 After hearing all of the evidence, the trial court concluded that a clerical error had been
committed and that Article 21.25 of the Code of Criminal Procedure is available to remedy
this type of situation. The trial court granted the State's motion to substitute indictment in
cause number 113, denied the appellant's application for a writ of habeas corpus, and
ultimately granted the State's motion to revoke the appellant's community supervision. 

 The appellant appealed the trial court's rulings and challenged, among other things, the
decision to substitute the indictment in cause number 113. The court of appeals held that
Article 21.25 is not applicable to this case because the "record does not reflect that the
indictment was lost, mislaid, mutilated, or obliterated." (7) The court of appeals then observed:

The record reflects that the grand jury returned an indictment naming Natalie
Gale as the injured party, but [the] [a]ppellant did not plead to that indictment and
that indictment was not in the file in cause number [113] until after the trial
court granted the State's motion to substitute, almost nine years after the plea. (8)


The court of appeals declared that double jeopardy was clearly violated when the appellant pled
guilty to two identical indictments. (9) To remedy this, the court of appeals declared the
appellant's conviction in cause number 113 to be void and reversed the trial court's judgment. (10) 
Subsequently, the State filed its petition for discretionary review challenging the court of
appeals' reversal of cause number 113, which we granted to examine the issue of whether
Article 21.25 authorizes the substitution of an indictment under these circumstances. 





ANALYSIS

Article 21.25 Article 21.25 dates back to the late 1800s. (11) The language of the statute remains
relatively untouched and essentially reads the same today as it originated. (12) Currently, Article
21.25 reads:

When an indictment or information has been lost, mislaid, mutilated or
obliterated, the district or county attorney may suggest the fact to the court; and
the same shall be entered upon the minutes of the court. In such case, another
indictment or information may be substituted, upon the written statement of
such attorney that it is substantially the same as that which has been lost,
mislaid, mutilated, or obliterated. Or another indictment may be presented, as
in the first instance; and in such case, the period for the commencement of the
prosecution shall be dated from the time of making such entry. (13)

Though the statute is longstanding, it has received relatively little judicial attention, especially
in recent times. Past cases have focused on whether the procedural requirements for the
substitution of an indictment have been met. (14) In our case, we are not confronted with such an
issue; instead, we must determine the general applicability of Article 21.25 to the particular
facts of this case. (15)

 We are faced with what we hope is an unusual factual scenario in which the district
clerk's file contains identical indictments in separately numbered causes charging the appellant
with the same offense. The State alleges that the court of appeals erred when it determined
Article 21.25 was inapplicable to this case. The State contends that if the indictment returned
by the grand jury in cause number 113 is not the indictment presently located in the clerk's
file, then the original indictment has either been lost or mislaid. The appellant counters that
Article 21.25 is not applicable because the original indictment in cause number 113 is the filed
indictment, and, thus, has never been lost or mislaid. In addition, the appellant further argues
that there is no evidence that the substituted indictment in cause number 113 was ever properly
presented by the grand jury in accordance with Article 20.21 of the Code of the Criminal
Procedure.

Presentment

 Before addressing the issue at hand, we must first answer a preliminary question
concerning whether the substituted indictment was properly presented. We conclude that the
indictment charging the appellant with the involuntary manslaughter of Natalie Gale, the
substituted indictment in cause number 113, was properly presented to the trial court. Article
20.21 governs the presentment of indictments. (16) Presentment occurs when an indictment is
delivered to either "the judge or clerk of the court." (17) Once an indictment is presented,
jurisdiction vests with the trial court. (18) The fact that an indictment is later lost, mislaid or
destroyed does not divest the trial court of jurisdiction. (19) 

 In this case, the evidence shows the grand jury returned an indictment that named Natalie
Gale as the victim. (20) This indictment was apparently delivered to the court clerk at the same
time the indictment in cause number 112 was delivered, as evidenced by the file stamps on the
indictments. (21) According to the purported original, the indictment was given cause number F-94-0113-E. Testimony at the hearing on the motion to substitute indictment established that
the purported original was the original indictment. (22) The fact that a signed indictment features
an original file stamp of the district clerk's office is strong evidence that a returned indictment
was "presented" to the court clerk within the meaning of Article 20.21. Because the purported
original indictment bears an original file stamp, that fact convincingly shows the presentment
requirement was satisfied. Although the appellant never asked the trial court to make a finding
on the record with respect to presentment, the trial court could have reasonably concluded that
the substituted indictment had been properly presented. (23)

"Lost, Mislaid, Mutilated, or Obliterated"

 Now turning to the issue before us, we conclude Article 21.25 is applicable. The statute
allows for substitution when an indictment has been lost, mislaid, mutilated or obliterated. The
State contends that the purported original indictment was lost or mislaid because at some point
after it was duly presented to the district clerk, it was inexplicably omitted from the clerk's file
due to a clerical error. We agree.

 Evidence from the hearing supports this inference. The assistant district attorney who
handled the plea process at the appellant's trial testified that she prosecuted the appellant for
the involuntary manslaughter of two victims. The appellant's trial counsel testified that he
represented the appellant with the understanding that the appellant was prosecuted for two
separate offenses of involuntary manslaughter. Also, the substituted indictment is an apparent
duplicate original indictment that charges the appellant with the involuntary manslaughter of
Natalie Gale. Furthermore, the State produced copies of the indictments that were in the
possession of both the appellant's trial counsel and the Denton County Probation Department
as well as copies from its own file. The copies of the indictments contained in all these
various files indicate that the grand jury charged the appellant with the involuntary
manslaughter of Tracy Carlton in cause number 112 and the involuntary manslaughter of
Natalie Gale in cause number 113.

 Based on the evidence, it appears that the filed indictment is the anomaly. The grand
jury returned two indictments that charged the appellant with two separate offenses of
involuntary manslaughter, and these distinct indictments were duly presented to the district
clerk. All parties involved were aware that the appellant faced prosecution for two separate
charges. However, prior to the substitution, the clerk's record mistakenly failed to reflect that
the appellant was charged in cause number 113 with an offense against Natalie Gale. 
Therefore, it was appropriate for the trial court to conclude that a clerical error occurred when
the indictments were taken to the district clerk to be filed that prevented the clerk's record in
cause number 113 from accurately reflecting that the appellant was charged in that cause with
the offense against Natalie Gale. The trial court could have concluded that the original
indictment was mislaid as a result of a clerical error when it was not filed by the clerk's office. 
Accordingly, Article 21.25 is applicable to this case because the statute allows for substitution
when an indictment is mislaid. The trial court appropriately substituted the indictment in cause
number 113. (24)

 CONCLUSION 


 We hold that the trial court did not err by applying Article 21.25 to remedy this
situation. The original indictment in cause number 113, after return and presentment by the
grand jury, was mislaid and not placed in the clerk's file due to clerical error. This error is
appropriately rectified by replacing the filed indictment with the original indictment as
returned by the grand jury, as Article 21.25 allows. Accordingly, we reverse the court of
appeals' judgment as it pertains to cause number 113, and we remand to the court of appeals
to consider the appellant's remaining points of error in that cause.


Delivered: May 23, 2007 

Publish
1. Tex. Code Crim. Proc. Ann. art. 21.25 (Vernon 1989).
2. This case involves a rather peculiar factual scenario and that peculiarity is exacerbated
by the particular procedure for procuring indictments in Denton County. Grand juries in
Denton County apparently return identical, duplicate original indictments for each cause. 
These duplicates are not considered copies, but original products of the grand jury. 


 To facilitate both our description of the facts and our analysis of the issue, we will
define certain terms as they appear in this opinion. In the context of the following discussion,
"duplicate original" refers to an indictment that was returned by the grand jury, presented to
the trial court, and that bears original file-markings from the district clerk's office. The
"original indictment" is defined as the indictment that was presented to the trial court with the
intention of being retained by the trial court in the district clerk's file, thus vesting jurisdiction
in the trial court. A "copy" is an identical reproduction of a duplicate original indictment. A
copy does not have to be a direct reproduction of a duplicate original; it can be a reproduction
of an already-made copy. "Filed indictment" is defined as the indictment on file with the
district clerk in cause number 113 with Tracy Carlton as the named victim. We define the term
"purported original" as the indictment that the State contends is the original indictment in
cause number 113, alleging Natalie Gale as the victim, that was erroneously omitted from the
district clerk's file. "Substituted indictment" refers to the indictment that was substituted by
the trial court for the filed indictment at the hearing on the motion to substitute indictment. 
The purported original indictment became the substituted indictment after the trial court ruled
on the motion to substitute indictment. We reiterate that these definitions are meant only to
facilitate a factual and analytical understanding of this particular case.


3. On August 15, 2003, the trial court began the hearing on the State's motion to substitute indictment. 
On October 24, 2003, the court continued that hearing and also heard the appellant's application for writ
of habeas corpus as well as the State's revocation motion.
4. Specifically, Henry testified:


 Q. What happens with those four originals in each case?


 A. Well, initially they're - we bring them back into the courtroom, and they are
presented to the judge who's presiding over the grand jury at the time, or a
substitute judge or whatever arrangements have been made. At that point the
indictments are distributed to the various parties that may be involved in the case.
5. The State introduced copies of the indictments contained in its file as well as the files of the
probation department and the appellant's trial counsel. It is unclear whether these files contained an actual
duplicate original indictment or a copy of a duplicate original. Therefore, it is equally unclear whether the
copies introduced into evidence at the hearing were copies of a duplicate original or copies of a copy.
6. Both Kevin Henry and Debra Carreathers, the chief deputy of the district clerk's office, identified
the proffered indictment as an original.
7. Dotson v. State, 190 S.W.3d 783, 785 (Tex. App.--Ft. Worth 2006).
8. Id.
9. Id.
10. Id. The trial court was reversed only in cause number 113; the appellant's conviction in cause
number 112 was affirmed. Id. at 785-786. The appellant did not file a petition for discretionary review
to challenge the court of appeals' affirmance in cause number 112.
11. Act approved February 15, 1858, 7th Leg., R.S., ch. 151, § 1, 1871 Tex. Gen. Laws 228, 236-37, reprinted in 4 H.P.N. Gammel, The Laws of Texas 1822-1897, at 1108 (Austin, Gammel Book Co.
1898). This act amended the Code of Criminal Procedure of 1857. The specific article in the act
pertaining to the substitution of indictments was art. 406a. See id.
12. Compare id. and Tex. Code Crim. Proc. art. 434 (1879) and Tex. Code Crim. Proc. art. 470
(1895) and Tex. Code Crim. Proc. art. 482 (1911) and Tex. Code Crim. Proc. art. 418 (1925) with Tex.
Code Crim. Proc. art. 21.25 (1965).
13. Tex. Code Crim. Proc. Ann. art. 21.25 (Vernon 1989).
14. See, e.g., Burton v. State, 135 Tex. Crim. 4, 117 S.W.2d 107 (1938) (holding that when the
record contains neither an original indictment nor shows proper substitution, then the conviction must be
reversed); Farrell v. State, 125 Tex. Crim. 96, 66 S.W.2d 694 (1934) (articulating that the record must
reflect that a request to substitute has been made in open court and that an order has been entered to
substitute the indictment); Hawk v. State, 115 Tex. Crim. 25, 27 S.W.2d 178 (1930) (discussing whether
a defendant is entitled to notice of the State's intention to substitute an indictment); Morris v. State, 96
Tex. Crim. 337, 257 S.W. 899 (1924) (describing the procedure to substitute an indictment, which
includes the filing of a formal motion); White v. State, 72 Tex. Crim. 16, 160 S.W. 703 (1913) (holding
substitution is improper when the record does not contain a statement that substituted indictment is
substantially the same as the indictment that was lost).
15. The appellant never complained that the procedural requirements under Article 21.25 were not
satisfied. See Carrillo v. State, 29 S.W.3d 262, 263-64 (Tex. App.--Houston [14th Dist.] 2000, pet.
ref'd), on remand from 2 S.W.3d 275 (Tex. Crim. App. 1999) (holding that one must object to any
perceived procedural defect in the substitution of an indictment to preserve the error for appeal). Nor did
he make any such challenge in the court of appeals.
16. See Tex. Code Crim. Proc. Ann. art. 20.21(Vernon 2005) ("When an indictment is ready to
be presented, the grand jury shall through their foreman, deliver the indictment to the judge or clerk of the
court.").
17. Id.
18. Tex. Const. art. V, § 12.
19. See Carrillo v. State, 2 S.W.3d 275, 278 (Tex. Crim. App. 1999) (holding that a lost indictment
does "not divest the court of jurisdiction . . . ."). 
20. The court of appeals acknowledged that an indictment naming Natalie Gale as the victim was
returned by the grand jury. Dotson, 190 S.W.3d at 785.
21. All copies of both the indictment naming Natalie Gale and the indictment naming Tracy Carlton that
were introduced into evidence at the hearing were file stamped on January 27, 1994 at either 2:09 p.m.
or 2:10 p.m. 
22. The purported original indictment bears an original file stamp, as Henry's and Carreathers's
testimony established.
23. The appellant did not object to a lack of presentment during the hearing on the motion to substitute
indictment and did not ask for a specific fact finding. Cf. Ross v. State, 32 S.W.3d 853, 855 (Tex. Crim.
App. 2000) (in context of pretrial hearings, "when the trial court fails to file findings of fact, we view the
evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit
findings of fact that support its ruling as long as those findings are supported by the record.").
24. Though the substitution occurred post-conviction, precedent apparently permits this. See Harwood
v. State, 16 Tex. Ct. App. 416 (1884) (authorizing the substitution of a lost indictment after conviction);
Turner v. State, 16 Tex. Ct. App. 318 (1884) (implying that an indictment may be substituted after
conviction and judgment); Schultz v. State, 15 Tex. Ct. App. 258 (1883) (adopting the Supreme Court
of Alabama's reasoning that an indictment may be substituted even after the rendition of judgment); see also
Glover v. State, 740 S.W.2d 94, 97 (Tex. App.--Dallas 1987, no pet.) (citing Harwood, Turner, and
Schultz for the proposition that a lost or destroyed indictment may be substituted post-conviction). The
appellant does not specifically challenge the substitution in this respect, and, therefore, we do not address
it further.